```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

JACQULYN GRAY,                    :
                                  :
        Plaintiff,                :    NO. 1:09-CV-00453
                                  :
    v.                            :
                                  :    **OPINION AND ORDER**
THE KROGER CORP.,                 :
                                  :
        Defendant.                :

This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 15), Plaintiff's Response in Opposition (doc. 24), and Defendant's Reply (doc. 29). The Court held a hearing on Defendant's Motion on February 1, 2011. For the reasons indicated herein, the Court GRANTS Defendant's Motion for Summary Judgment, and DISMISSES this matter from the Court's docket.

**I. Background**

Plaintiff Jacqulyn Gray began working for Defendant Kroger Corporation in July 1979, resigned in 1988, and then returned in 1990 (doc. 15). Over an almost thirty year period, she worked in various administrative and clerical roles, most recently in Kroger's Consumer Affairs Claims Department and Call Center, starting in late September 2007 (docs. 15, 24). One of Plaintiff's primary duties was to review the timecard reports for more than 100 hourly employees who work in the call center, to make sure employees were clocking in and out, and to ensure the payroll

department would accurately pay employees (doc. 15). Plaintiff was not getting along well with her supervisor, Joanein Watson, and after arguing with her in August 2008, she went to HR manager Hetty Roberto to complain (Id.). During this conversation, Plaintiff revealed to Roberto that she had been altering time cards to reduce overtime pay, at Watson's instruction. Roberto told Plaintiff this was illegal and she needed to stop (Id.).

Kroger terminated both Plaintiff's and Watson's employment on December 5, 2008, after conducting an investigation which led them to believe that both Plaintiff and Watson had been illegally altering time cards to reduce overtime pay to employees (Id.). Kroger contends that Plaintiff continued the practice even after warned by Roberto to stop (Id.).

At the time of her termination, Plaintiff was vested in her retirement plan, because she was 62, and she receives retirement benefits (Id.). However, being dissatisfied with the circumstances of her discharge, Plaintiff brought a Complaint, originally in state court, for federal and state law age discrimination, for ERISA discrimination, for FMLA retaliation, for FLSA retaliation, and for breach of Ohio public policy (doc. 1). Plaintiff has conceded summary judgment as to her ERISA claim (doc. 24). Defendant has moved for summary judgment, contending that each of Plaintiff's remaining claims fail (doc. 15). This matter is ripe for the Court's decision.

## II. Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes

3

demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).  The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case.  See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on

4

which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the

5

motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. Analysis**

The Court finds it appropriate to address the core arguments raised by the parties at the February 1, 2011 hearing, before addressing remaining arguments raised in their briefing. At the hearing, Defendant essentially argued that although Plaintiff can establish a prima facie case for age discrimination because she was replaced by a thirty-nine year old, Plaintiff cannot show that Defendant's legitimate nondiscriminatory reason for terminating Plaintiff's employment is pretextual. In Defendant's view, it conducted a month-long investigation into the allegation that Plaintiff was improperly altering employee time records, and concluded that she continued to do so after instructed to stop. As such, Defendant contends it had a legitimate business reason, an honest belief that Plaintiff was breaking the law, and therefore it should prevail on its motion for summary judgment as to Plaintiff's age discrimination claims. Defendant further argues Plaintiff

cannot even establish prima facie cases for either FMLA retaliation or FLSA retaliation.

Plaintiff's counsel argued in response that it was Plaintiff's job to alter time records, when for example, there was a mistake, and there is no evidence that Plaintiff continued to make improper alterations after she was advised to stop. Upon further questioning, the Court ascertained that when Plaintiff made alterations of time records, there was a "comment field" in the "KRONOS" data entry system, and Plaintiff's testimony showed that when she was improperly taking time away from employees, she stated she intentionally left such field blank. When Defendant conducted its audit of time-keeping records, it found that even after Plaintiff had been advised to stop taking time away from employees, the records showed she continued to make alterations and leave the "comment field" blank. Defendant construed such evidence to mean that Plaintiff continued to alter records improperly, even after warned to stop. In contrast, Plaintiff appears to argue that both her statement that she stopped, and the fact that the comment fields were blank, show there is no evidence to support Defendant's theory that she continued to improperly alter time records. Moreover, Plaintiff contends she in no way benefited from any of the alterations she made, and she only made such changes under the direction of Watson.

Plaintiff's counsel further argued at the hearing that

7

Defendant used a statement Plaintiff wrote on November 21, 2008, as evidence both in support of Watson's termination and in opposition to Watson's application with the Ohio Department of Jobs and Family Services for unemployment benefits.  Such two-and-a-half page handwritten statement shows that Plaintiff claimed to have only acted under the direction of Watson, that Plaintiff had at least four discussions with human resources, and that Plaintiff "never continued to do anything wrong" after being advised to stop (doc. 23).  Because Richard Manger, of Defendant's Human Resources Department, testified that he submitted Plaintiff's statement as a true statement so as to justify Watson's termination, Plaintiff's counsel argues Defendant's choice to not believe Plaintiff's statement that she did nothing wrong after being told to stop shows Defendant's animus toward Plaintiff.  Finally, Plaintiff's counsel insisted that Plaintiff "complained to human resources no fewer than four times," about the alterations and "requested an investigation of this no fewer than four times."

Defendant's counsel responded, citing the deposition of Sven Smith, a benefits specialist in Defendant's Human Resources Department, which shows Plaintiff did ask several times about the status of the investigation into time record alterations, but not in the context of repeatedly reporting wrongdoing, but rather out of the concern that she was in trouble (doc. 22).  Moreover, Defendant argued, it submitted Plaintiff's statement in opposition

to Watson's unemployment as evidence that Watson had instructed Plaintiff to do something improper.

Having reviewed the arguments raised at the hearing, the Court finds Plaintiff's counsel is overreaching. It is incorrect to state that Defendant had <u>no</u> evidence based on its audit of time-keeping records to conclude that Plaintiff continued to alter records even after having been advised to stop. Defendant had the evidence of blank "comment fields" next to alterations in the data entry system, which Plaintiff had previously admitted evidenced her practice when shaving time off employees' records. It is further a stretch to state that Plaintiff complained five times about the record alteration practice, as the deposition evidence, which the Court has reviewed, does not reflect such position. The deposition evidence reflects, rather, that Plaintiff repeatedly complained about her unfortunately problematic relationship with Watson, and in so doing mentioned the practice and inquired about Defendant's investigation. Finally it is incorrect to insist Defendant's use of Plaintiff's statement, for the purpose of opposing Watson's unemployment application, somehow forces Defendant to accept as true every proposition within such statement.

The Court will now address the arguments raised in the parties' briefing.

**IV. Ohio and Federal Law Age Discrimination**

Ohio and federal law prohibit discrimination on the basis

of age in employment decisions. O.R.C. § 4112.02(A), Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a). Under these provisions, Plaintiff may assert a prima facie case through the presentation of either direct or indirect evidence. Allen v. Ethicon, Inc., 919 F. Supp. 1093, 1098 (S.D. Ohio 1996).

Defendant claimed in its briefing that there is no evidence to support Plaintiff's age discrimination claims, but then at the hearing conceded Plaintiff can establish a prima facie case through circumstantial evidence. As for direct evidence, in its briefing, Defendant states Plaintiff bases her age claim on two general conversations with two managers, Teresa Boggs and Hetty Roberto, neither of whom were involved with the termination decision (doc. 15). Right before Plaintiff turned 62 years old, Boggs asked her if Plaintiff would retire, or keep working, as Plaintiff would be eligible for full retirement benefits (Id.). Roberto referenced the same fact, after Plaintiff's termination, that Plaintiff had retirement benefits (Id.). Defendant argues these are benign conversations with regard to Plaintiff's age and do not represent age-related animus (Id.). In fact, Defendant contends that half of its call center employees are older than forty, which shows it does not engage in ageism (Id.).

The Court finds Defendant's contention well-taken that the discussions with Boggs and Roberto do not constitute direct evidence of age discrimination. Direct evidence of discrimination

occurs when either the decision-maker or an employee who influenced the decision-maker made discriminatory comments related to the employment action in question.  See Reeves v. Sanderson Plumbing, 530 U.S. 133, 152 (2000), Ross v. Campbell Soup Co., 237 F. 3d 701, 707-08 (6th Cir. 2001).   Direct evidence "is evidence which if believed, would prove the existence of a fact . . . without any inferences or presumptions."  Lautner v. American Tel. and Tel. Co., 1997 U.S. App. LEXIS 1267, No. 95-3756,(6th Cir. Jan. 22, 1997).  The evidence proffered here simply does not meet the legal test so as to constitute direct evidence of age discrimination.

As the Court noted above, Defendant concedes that Plaintiff can establish a circumstantial prima facie case of age discrimination by proffering evidence that 1) she was in the protected class, 2) she was qualified, 3) she suffered an adverse employment action, and 4) she was replaced by someone outside the protected class. McDonnell Douglas v. Green, 411 U.S. 792 (1973). The Court agrees.  The burden of proof therefore shifts to Defendant to proffer a legitimate non-discriminatory reason for its termination decision.  St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

In this case, the evidence shows Defendant conducted an audit of the time-keeping records which showed Plaintiff engaged in activity that Defendant viewed as improper, and probably illegal. Defendant took more than a month to review the time records,

11

interview both Plaintiff and Watson, and to review its code of ethics and code of conduct policies. Defendant contends that it terminated Plaintiff's employment based on its honest belief that Plaintiff engaged in time record alterations, and also on its belief that she continued to do so after having been warned to stop. The record further shows that because Plaintiff had worked in Defendant's legal department, Defendant thought she should have known better than to alter time records to eliminate overtime. Defendant relies on Smith v. Chrysler, 155 F.3d 799 (6th Cir. 1998), for the proposition that so long as an employer can establish it relied on particularized facts to motivate its decision, it demonstrates an "honest belief" that its intent was nondiscriminatory. Under such "honest belief" rule, "so long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial or baseless." Smith, 155 F.3d at 806, citing Kariotis v. Navistar Int'l Trans. Corp., 131 F.3d 672, 676 (7th Cir. 1997). As the Smith court explained, the rationale of such rule is to focus on the intent of the employer, such that if the employer honestly, but mistakenly believes in the non-discriminatory reason it relied upon in making its decision, it lacks the necessary discriminatory intent. Id. "In other words, arguing about the accuracy of the employer's assessment is a distraction, because the

question is not whether the employer's reasons for its decision are 'right but whether the employer's description of its reason is honest.'" Id., quoting Kariotis, 131 F.3d at 677 (quoting Gustovich v. AT&T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992)).

The Court finds well-taken Defendant's invocation of the "honest belief" rule in this instance. Although the Court is sympathetic to this long-term employee, who acted under the direction of another, and in the context of a stressful working relationship, the Court finds no evidence in the record showing Kroger lacked an honest belief that both Watson and Plaintiff engaged in improper conduct that merited their termination. Both were in fact, terminated. The Court cannot find that Defendant's reasons for terminating Plaintiff had no basis in fact, did not actually motivate the decision, or was never used to discharge another employee. Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 883 (6th Cir. 1996).

Plaintiff has not proffered evidence to rebut Defendant's honest belief that it terminated her for time-card alterations. Plaintiff's argument that it is unclear who made the termination decision, and that such lack of clarity should throw such decision into question is not well-taken. The record shows consistent testimony from numerous employees who were involved in the investigation showing everyone understood Plaintiff's termination was related to her time-card alterations. Moreover, the record

13

shows Defendant's Director of Talent Management Richard Magner, who led the investigation, made the decision to terminate Plaintiff's employment, after consultation with others. Finally, Plaintiff's invocation of Gideon v. Rite Aid of Ohio, Inc., No. 1:08-CV-00426, 2009 U.S. Dist. LEXIS 104893 *1 (November 10, 2009), is not on point with this case, because in Gideon, there were questions of fact as to whether the employer had an honest belief in its reason for termination, due to contradictory testimony in the record. The Court therefore finds Defendant entitled to summary judgment, as a matter of law, on Plaintiff's state and federal law age discrimination claims.

**V. FMLA and FLSA Retaliation**

The parties dispute whether Plaintiff can establish prima facie cases for FMLA and FLSA retaliation. However the Court need not reach such arguments, because the same burden-shifting analysis, articulated above, applies to such claims. McDaniel v. Transcender, LLC, 119 Fed. Appx 774, 779 (6th Cir. 2005)(McDonnell Douglas burden-shifting test is applicable to FLSA retaliation claims); Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (applying McDonnell Douglas in context of FMLA retaliation claim). Defendant is similarly entitled to summary judgment as to such claims, because Plaintiff cannot show that Defendant's legitimate nondiscriminatory reason for her termination is pretextual.

**VI.  Ohio Public Policy**

Plaintiffs final claim is that Defendant's action in terminating her violates Ohio public policy.  The Court finds well-taken that Defendant is entitled to summary judgment as to such claim, because her underlying statutory claims fail (doc. 29, citing DeJohn v. Tippman Group/Interstate Warehousing, Inc., No. 1:05-CV-591, 2008 WL 2230194, at *9 (S.D. Ohio May 29, 2008)). Moreover, in any event, the Court finds the public policy tort is unavailable where there are adequate statutory remedies.  Wiles v. Medina Auto Parts, 713 N.E.2d 526 (Ohio 2002), Kolcun v. Nationwide Ins. Co., 2006 WL 1447299, *10 (S.D. Ohio May 24, 2006), and Stange v. Deloitte & Touche, 2006 WL 871242, *5 (S.D. Ohio April 5, 2006). For all of these reasons, Defendant prevails.

**VII.  Conclusion**

This is a case in which a long-term employee lost her job due to involvement in improper alterations of time records of other employees.   It  is  regrettable  that  Plaintiff's  employment relationship with her superior, who was also fired for the same activity, was so terrible.  However such a terrible relationship does not give rise to the age, FMLA, FLSA, and public policy claims that  Plaintiff  has  asserted.   Defendant  Kroger  Corporation conducted an investigation, and based on its audit, had an honest belief that Plaintiff should have known better, and an honest belief that she continued in such activity when warned to stop.

15

The question, again, is not whether Kroger's belief was right or correct, but whether it was honest.  <u>Smith</u>, 155 F.3d 799, 806.

The Court also notes that the record shows that Plaintiff cooperated completely with Defendant's investigation, and was honest with Defendant about her actions under the direction of her supervisor.  Plaintiff's honesty is to her credit.

Accordingly, having reviewed this matter and having heard counsel's oral arguments before the Court, the Court GRANTS Defendant's Motion for Summary Judgment (doc. 15) as to each of Plaintiff's claims, and DISMISSES this matter from the Court's docket.

SO ORDERED.


Dated: April 11, 2011         <u>/s/ S. Arthur Spiegel         </u>
                              S. Arthur Spiegel
                              United States Senior District Judge